# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

YOLANDA MARTES, MARIA RAMIREZ, PAULA NEHER, FELIX RAPALO AND SHAWNEEQUA ELLIOTT as Guardian for JAZMIN AMBROSE, a minor
    Plaintiffs,

vs.

FRANK SACCO, IN HIS OFFICIAL CAPACITY AS CHIEF EXECUTIVE OFFICER OF SOUTH BROWARD HOSPITAL DISTRICT,
THOMAS W. ARNOLD, IN HIS OFFICIAL CAPACITY AS SECRETARY, FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION AND
GEORGE H. SHELDON, IN HIS OFFICIAL CAPACITY AS SECRETARY, FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES
    Defendants
_____/

## COMPLAINT FOR DECLARATORY, INJUNCTIVE RELIEF AND DAMAGES

### I.  PRELIMINARY STATEMENT

1. At the time of treatment, the Plaintiffs were Florida Medicaid/Medically Needy program recipients who were illegally billed for medical services provided by the South Broward Hospital District (hereafter "SBHD"). Most of the Plaintiffs who received illegal medical bills were severely ill. Ms. Neher had terminal Cancer and her doctor told her, she would die in a few months. In addition to their poor health, the Plaintiffs were deluged with medical bills, collection agencies, and their credit destroyed.

2. The Florida Agency for Health Care Administration (hereafter "AHCA"), which is responsible for administering Florida's Medicaid program, did not promote the

integrity of the Medicaid Act by failing to properly monitor, educate or train SBHD on payment integrity. See 42 U.S.C. §1396u-6(b)(4).

3. Plaintiffs seek a declaration that AHCA, DCF and SBHD actions violated the Medicaid Act, federal and state law and AHCA's rules and regulations and handbook. In addition, injunctive relief mandating that AHCA and DCF enforce their own laws to protect the plaintiffs.

4. Plaintiffs seek an injunction directing SBHD from charging/suing/putting into collections, or in any way harassing Plaintiffs for any monies already received for services provided under the Medicaid/Medically Needy program. Plaintiffs additionally seek monetary relief for damage sustained from SBHD's actions.

## II.   JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims presented in this action pursuant to 28 U.S.C. § 1331, which affords original jurisdiction in all civil actions arising under the Constitution, Laws, or Treaties of the United States, and 28 U.S.C. § 1343(a)(3)-(4), which provides original jurisdiction to redress the deprivation, under the color of any state law, regulation or usage, or any right secured by the United States Constitution or an Act of Congress and to secure equitable or other relief under any Act of Congress.

6. Declaratory relief is authorized by 28 U.S.C. § 2201-2202. This action and the relief requested are authorized under 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the Constitution and laws of the United States.

7. Venue for this action lies in the Southern District of Florida because the Plaintiffs live in the district.

### III. PARTIES

8. At the time of her treatment, Yolanda Martes lived in Pembroke Pines, Florida. At the time of Ms. Martes treatments, she was a recipient under the Medicaid/Medically Needy program and should not have been billed and/or sued for charges she did not owe to SBHD and any other service provider.

9. Paula F. Neher lives in Davie, Florida. At the time of Ms. Neher treatments, she was a recipient under the Medicaid/Medically Needy program and should not have been billed, harassed, or sued for charges she did not owe to SBHD and any other service provider.

10. Felix Rapalo lives in Margate, Florida. At the time of Mr. Rapalo treatments, he was a recipient under the Medicaid/Medically Needy program and should not have been billed, harassed, or sued for charges he did not owe to SBHD and any other service provider.

11. Maria Ramirez lives in Miramar, Florida. At the time of Ms. Ramirez treatments, she was a recipient under the Medicaid/Medically Needy program and should not have been billed, harassed, or sued, or had her credit ruined for charges she did not owe to SBHD and any other service provider.

12. Jazmin Ambrose lives in Tamarac, Florida. At the time of Ms. Ambrose treatments, she was a recipient under the Medicaid/Medically Needy program and should not have been billed, harassed or sued for charges she did not owe to SBHD and any other service provider.

13. Thomas W. Arnold is the Secretary of the Florida Agency for Health Care Administration, which administers Florida's Medicaid program. Mr. Arnold is sued in his official capacity only, as Secretary of AHCA. As such, he has a duty to ensure that AHCA programs are administered in accordance with federal Medicaid law.

14. AHCA is the single state agency responsible for ensuring that health services are provided to eligible Florida residents in compliance with federal Medicaid law. See 42 U.S.C. § 1396a(a)(5); FLA. STAT. ch. 409.901(2), (14), (15); FLA. STAT. ch. 409.902.

15. George H. Sheldon is the Secretary of the Florida Department of Children and Families (hereafter "DCF"). Mr. Sheldon is sued in his official capacity only, as Secretary of DCF. As such, he has a duty to ensure that DCF complies with federal rules and regulations.

16. DCF is the state agency responsible for determining Medicaid/Medically Needy eligibility.

17. Defendant South Broward Hospital District is a non-profit corporation, (the "Hospital") incorporated, organized and operating under the laws of the State of Florida with Memorial hospital's principal place of business in Hollywood, Florida, and South Broward Hospital District runs Memorial Regional Hospital, Memorial Hospital West and Memorial Hospital Pembroke.

18. Coral Springs Medical Center ("CSMC"), Northwest Medical Center ("NMC"), Plantation General Hospital ("PHG") and Imperial Point Medical Center ("IPMC")

are not Defendants in this suit, but are contracted Medicaid/Medically Needy providers that wrongfully and illegally billed the Plaintiffs.

## IV. STATUTORY AND REGULATORY FRAMEWORK

19. The Medicaid program is a cooperative federal/state program that provides health care services to specified categories of individuals meeting income and other criteria. See 42 U.S.C. §§ 1396-1396V. States are not required to participate in Medicaid. If a state chooses to participate, however, it must comply with federal requirements. The purpose of the Medicaid Act is to enable states, as far as practicable, to furnish services that help the poorest families and disabled persons "attain or retain capability or independence or self care." See 42 U.S.C. § 1396-1.

20. Florida participates in the Medicaid program. See Fla. Stat. ch. 409.902.

21. The federal Medicaid statute lists specific items and categories of services that the state must provide. See 42 U.S.C. §1396a(a)(10). Such services include medical assistance and providing for consultative services to hospitals in order to assist them; to qualify for payment under the Medicaid Act and to provide information needed to determine payment due under the Medicaid Act because of care and services furnished to individuals. See 42 U.S.C. §1396a(a)(24)(A)&(C).

22. Medical assistance means the state pays for part or all the cost of inpatient hospital services. See 42 U.S.C. §1396d(a)(1). Only providers who accept, as payment in full, the amounts paid by the state agency can participate in the Medicaid program. See 42 C.F.R. § 447.15.

23. The Medicaid Act places a duty on the Secretary of the Florida Agency for Health Care Administration (AHCA), to promote the integrity of the Medicaid program by reviewing actions of entities providing services to determine whether fraud, abuse has occurred or is likely to occur, or whether the entities actions have any potential for disbursement of funds in a manner not intended. See 42 U.S.C. § 1396u-6(a) &(b)(1). And educating or training providers of service on payment integrity. See 42 U.S.C. §1396u-6(b)(4).

24. A state Medicaid Plan may impose enrollment fees, premiums, deductions and cost sharing, only as provided in section 1396o. See 42 U.S.C. § 1396a(14). No deduction, cost sharing or similar charge will be imposed under the state Medicaid plan on any Medicaid recipient who is a patient in a hospital. See 42 U.S.C. §1396o(a)(2)(c).

25. AHCA's Policy regarding reimbursement of Inpatient hospital is in Fla. Admin. Code. R. 59G-6.020, which incorporates by reference Florida Title XIX Inpatient Hospital Reimbursement Plan Version XXXII.

26. Titled "mandatory Medicaid services" Fla. Stat. Ch. 409.905(5) provides that AHCA "shall pay for all covered services" provided for medical care and treatment at an inpatient hospital.

27. An inpatient hospital must accept AHCA's Medicaid payment as payment in full, and cannot bill or collect from recipient any additional amount, except only required copayment, coinsurance or deductibles. See Fla. State. Ch. 409. 907(3)(j); Florida Title XIX Inpatient Hospital Reimbursement Plan Version XXXII.

28. In addition to billing DCF and AHCA for medical services provided, SBHD wrongfully and illegally billed the plaintiffs.

29. Both AHCA and DCF failed to properly monitor, educate or train SBHD regarding the propriety, procedures and responsibilities of contract providers such as SBHD in illegally charging and billing for medical services provided under the Medicaid Act to the Plaintiffs.

## V.   FACTS

### Plaintiff Ms. Martes

30. DCF enrolled Ms. Martes in the Medicaid/Medically Needy program in 2004.

31. SBHD provided medical services to Ms. Martes on October 17, 2004 and November 19, 2004.

32. In addition to submitting the bill to DCF for payment by AHCA, SBHD wrongfully and illegally billed Ms. Martes, subsequently filing a lawsuit against her for a debt she did not owe.

33. When Ms. Martes rightfully did not pay, SBHD gave the rights to the medical bill to a third party "a collection agency".

34. SBHD allowed the collection agency to wrongfully harass and destroy Ms. Martes' credit, with the knowledge of AHCA and DCF.

### Plaintiff Ms. Ramirez

35. DCF enrolled Ms. Ramirez in the Medicaid/Medically Needy program in 2008.

36. SBHD provided medical services to Ms. Ramirez on April 18, 2008 to May 1, 2008 and August 1, 2008.

37. In addition to submitting the bill to DCF for payment by AHCA, SBHD wrongfully and illegally billed Ms. Ramirez.

38. When Ms. Ramirez rightfully did not pay, SBHD gave the rights to the medical bill to a third party "a collection agency".

39. SBHD allowed the collection agency to wrongfully harass and destroy Ms. Ramirez's credit, with the knowledge of AHCA and DCF.

### Plaintiff Ms. Neher

40. DCF enrolled Ms. Neher in the Medicaid/Medically Needy program in 2008 and 2009.

41. SBHD provided medical services to Ms. Neher on December 21-22, 2008 and March 16, 2009.

42. In addition to submitting the bill to DCF for payment by AHCA, SBHD wrongfully and illegally billed Ms. Neher.

43. When Ms. Neher rightfully did not pay, SBHD gave the rights to the medical bill to a third party "a collection agency".

44. SBHD allowed the collection agency to wrongfully harass and destroy Ms. Neher's credit, with the knowledge of AHCA and DCF.

### Plaintiff Mr. Rapalo

45. DCF enrolled Mr. Rapalo in the Medicaid/Medically needy program in 2005, 2006, 2007 and 2008.

46. CSMC provided medical services to Mr. Rapalo on June 19-23, 2006. NMC provided medical services to Mr. Rapalo on September 11, 2005 and July 19, 2006. IPMC provided medical services to Mr. Rapalo on January 15, 2008.

47. In addition to submitting the bill to DCF for payment by AHCA, CSMC, NMC and IPMC wrongfully and illegally billed Mr. Rapalo.

48. Mr. Rapalo paid some of his medical bills because the collection agency has harassed and destroyed his credit with the knowledge of AHCA and DCF.

**Plaintiff Ms. Ambrose**

49. DCF enrolled Ms. Ambrose in Healthy Kids Insurance on or about 2000.

50. PHG provided medical services to Ms Ambrose on August 17, 2009 and September 18, 2009.

51. In addition to submitting the bill to DCF for payment by AHCA, PHG wrongfully and illegally billed Ms. Ambrose.

52. PHG allowed the collection agency to wrongfully harass and destroy Ms. Ambrose's credit, with the knowledge of AHCA and DCF.

**AHCA's and DCF's Actions**

53. DCF enrolls individuals in the Medicaid/Medically Needy Program that have met their "share of cost".

54. "Share of cost" is not an amount for which the patient is necessarily responsible; rather, a threshold below which a patient is ineligible for benefits under the Florida Medicaid/Medically Needy Program.

55. But SBHD and its agents knew or should have known that "share of cost" means the Plaintiffs do not pay for the medical services provided.

56. AHCA and DCF failed to properly inform the Plaintiffs that:

   A. they should not pay for medical treatment when they have met their share of cost;

    B. SBHD would submit their medical bills to DCF;

    C. AHCA would make payment when the Plaintiffs had met the share of cost;

    D. The Plaintiffs are not responsible to pay SBHD, doctors or for services provided by agents of SBHD, such as, specialist, exams, x-rays, etc.

57. After receiving SBHD's illegal bills, the Plaintiffs told AHCA and DCF about SBHD's illegal conduct through the undersigned attorney.

58. Even to this date, after four years of litigation, DCF and AHCA have not properly monitored or trained SBHD and other service providers as mentioned above;

    A. about their responsibilities under the Medicaid/Medical Needy program, specifically that SBHD and other service providers should not bill medically needy recipients for Medicaid treatment;

    B. that service providers should attempt to neither collect for services already paid nor file lawsuits for money not owed to SBHD and other service providers.

59. AHCA and DCF knew or should have know that their failure to properly monitor, educate or train Medicaid providers in the Medicaid/Medically Needy program;

    A. would lead to lawsuits against the Plaintiffs;

    B. loss of good credit standing;

    C. deceptive and unfair debt collection procedures resulting in worsening of the Plaintiffs quality of life in leasing or purchasing property, real and personal, ect.

**SBHD's Actions**

60. SBHD and other service providers submitted claims to AHCA for reimbursement for medical services provided to the plaintiffs.
61. A material requirement of eligibility for such funds was SBHD's certification that they would affirmatively comply with each and all provisions of the Medicaid Act, all federal law, all state law and AHCA's rules and regulations and Florida Title XIX Inpatient Hospital Reimbursement Plan Version XXXII.
62. More specifically, SBHD represented that they would bill only AHCA for any medical services provided and would accept only AHCA's payment as payment in full, pursuant to Florida Title XIX Inpatient Hospital Reimbursement Plan Version XXXII.
63. In submitting each claim, SBHD renewed and incorporated the previous certifications that it had acted in compliance with the requirements set out in paragraphs 61 and 62 above.
64. In addition, SBHD obligated itself to comply with all provisions of the Medicaid Act and Florida Title XIX Inpatient Hospital Reimbursement Plan Version XXXII.
65. SBHD was aware of each and all of the requirements described in paragraphs 61-64 above, each time it submitted a claim for reimbursement and was likewise aware of its authority and responsibility to bill the DCF for medical services provided and receive payment from AHCA.
66. SBHD submitted claims for reimbursement to DCF.
67. These claims included explicit and/or implicit representations that SBHD had and was complying with the obligations set forth in paragraphs 56-63 above,

obligations of which SBHD was aware each time they submitted such claims for payment.

## COUNT I

### Violation of the Medicaid Act
### 42 U.S.C. § 1396u-6(a)
### Medicaid Integrity Program

68. The Plaintiffs incorporate by reference paragraphs (1)through (67) above as if fully set forth herein.

69. AHCA and DCF failed substantially to promote the integrity of the Medicaid program, set for in 42 U.S.C. § 1396u-6(b)(1) & (4), requiring AHCA to (i) determine whether abuse of the program had occurred and (ii) monitor, educate or train SBHD on the proper reimbursement procedures and practice.

70. Because of AHCA's and DCF's failure to substantially comply with those requirements, the Plaintiffs have been severely and irreparably injured and continue to suffer damages. Further, there is no adequate remedy at law to stop AHCA and DCF from failing to promote the integrity of the Medicaid Program.

## COUNT II

### Violation of the Medicaid Act
### 42 U.S.C. § 1396a(a)(24)(A) & (C)
### Consultative Services

71. The Plaintiffs incorporate by reference paragraphs (1)through (67) above as if fully set forth herein.

72. AHCA and DCF failed substantially: (i) to assist SBHD in qualifying for payment under the Medicaid Act and AHCA's rules and (ii) to provide information needed

to determine payment. Had AHCA and DCF provided clear information about "share of cost", SBHD would not abuse the Medicaid program by submitting claims to DCF and illegally billing the Plaintiffs.

73. Because of AHCA's and DCF's failure to educate SBHD about "Share of Cost", the Plaintiffs have been severely and irreparably injured and continue to suffer damages. There is no adequate remedy at law to stop AHCA and DCF from failing to comply with Paragraphs 72 and 73.

## COUNT III

### Violation of the Medicaid Act
### 42 C.F.R. § 447.15
### Payments for Services

74. The Plaintiffs incorporate by reference paragraphs (1) through (67) above as if fully set forth herein.

75. SBHD failed to comply substantially with the express condition for participating in the Medicaid program, set forth in 42 C.F.R. § 447.15, requires SBHD to accept the amount paid by AHCA as payment in full.

76. SBHD billed DCF and the Plaintiffs for the medical services provided.

77. Because of SBHD's illegal billing practice and allowing a collection agency to illegally harass and destroy the Plaintiffs credit, the Plaintiffs have been severely injured and continue to suffer damages. Additionally, there is no remedy at law to require SBHD to cure its illegal practices.

## COUNT IV

### Violation of Fla. Stat. Ch. 409.920(2)(a)(3)
### Medicaid Provider Fraud

78. The Plaintiffs incorporate by reference paragraphs (1) through (67) above as if fully set forth herein.

79. SBHD knew that AHCA is responsible for paying for medical services provided under the Medicaid program to the Plaintiffs.

80. SBHD knowingly billed the Plaintiffs for medical services provided under the Medicaid program.

81. Through its collections agencies, SBHD threatened and accepted payments from Mr. Rapalo for medical services provided under the Medicaid program.

82. When the Plaintiffs rightfully did not pay, SBHD allowed a collection agency to illegally harass and destroy the Plaintiffs' credit.

83. Because of SBHD's actions, the Plaintiffs have been severely and irreparably injured and continue to suffer damages. In addition, there is no adequate remedy at law to compel SBHD to cure its illegal conduct.

## COUNT V

### Common Law Fraud

83. The Plaintiffs incorporate by reference paragraphs (1) through (67) above as if fully set forth herein.

84. SBHD made material misrepresentations of fact to DCF, AHCA and the Plaintiffs with knowledge of or in reckless disregard of their truth, in connection with the SBHD submitting claims to DCF and illegally billing the Plaintiffs.

85. SBHD intended that AHCA, DCF and the Plaintiffs would rely upon the accuracy of the false representations referred to above.

86. AHCA made substantial payments of money to SBHD in justifiable reliance upon SBHD false representations; as did Mr. Rapalo.

87. SBHD actions caused AHCA and the Plaintiffs to suffer damages in a substantial amount to be determined at trial. In addition, there is no adequate remedy at law to force SBHD from submitting false representations referred to above.

## COUNT VI

### Unjust Enrichment

88. The Plaintiffs incorporate by reference paragraphs (1) through (67) above as if fully set forth herein.

89. Because of payments made by AHCA and Mr. Rapalo, based on claims for payment submitted to DCF and the Plaintiffs, SBHD was unjustly enriched.

90. The circumstances of SBHD receipt of these payments are such that, in equity and good conscience, they should not retain those payments.

91. SBHD actions caused AHCA and the Plaintiffs to be damaged in a substantial amount to be determined at trial. In addition, there is no adequate remedy at law to force SBHD to comply with federal and state law handbook.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that this Honorable Court:

A. Declare that: (1) AHCA's and DCF's action violated requirements of the Medicaid Act 42 U.S.C. § 1396a(a)(24)(A) & (C); 42 U.S.C. § 1396 u-6 (b)(1) & (4) and (2) AHCA's and DCF's action is inconsistent with the requirement of 42 U.S.C. § 1396a(a)(24)(A) & (C); 42 U.S.C. § 1396 u-6 (b)(1) & (4).

B. Declare that: (1) SBHD actions violated requirements of 42 U.S.C. § 447.15; the Medicaid Act, federal and state laws, AHCA's rules and (2) SBHD action is inconsistent with the requirement of 42 U.S.C. § 447.15; the Medicaid Act, federal and state laws and AHCA's rules.

C. Enter an injunction enjoining SBHD from charging/suing/putting into collection, or in any way harassing the Plaintiffs for any money alleged to be owing after "share of cost" is met and implement procedures that differentiate Medicaid patients from other patients.

D. Enter judgment for the Plaintiffs and against SBHD for: compensatory damages, consequential damages, emotional distress damages and punitive damages.

E. Mandate that an audit be conducted by an independent auditor to determine if SBHD is engaging in a wide spread practice of submitting claims to AHCA and DCF and billing medically needy recipients.

F. On the fifth claim (Common Law Fraud), in an amount to be, determined at trial, together with costs and interest.

G. On the sixth claim (Unjust Enrichment), in an amount to be, determined at trial, together with costs and interest.

H. Award Plaintiffs reasonable attorney's fees and court costs.

I. Award such other relief as the Court deems just and equitable.

Respectfully submitted

*[signature]*

SHARON BOURASSA, ESQUIRE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that a true and correct copy of the foregoing has been filed by electronic mail to the Florida Southern District Court and served upon Mr. Frank Sacco, Chief Executive Officer, Memorial Healthcare Systems a/k/a South Broward Hospital District, 3501 Johnson Street, Hollywood, Florida 33021, Secretary George Sheldon, Secretary for the Department of Children & Family Services, 1317 Winewood Blvd., Building I, Room 202, Tallahassee, Florida 32399, and Secretary Thomas W. Arnold, Secretary for the Agency for Healthcare Administration, 2727 Mahan Drive, Tallahassee, Florida 32308; on this ____ day of September, 2010.

Respectfully Submitted

BY: _____
**SHARON BOURASSA, ESQ.**
Fla. Bar No. 341894
Legal Aid Service of
Broward County, Inc.
Attorney for Counterdefendant
491 N. State Rd. 7
Ft. Lauderdale, Fl 33317
Tel: (954) 736-2422
Fax: (954) 736-2480